## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

JASON MENCER,
VINCENT DOUGHERTY,
TIM HARROLD,
ROSS HEPBURN,
JOSH FRASIER, and
CODY WALDEN, individually
and on behalf of members of
the proposed Classes;

     Plaintiffs,                           **CASE NO.:**

v.                                   **CLASS ACTION COMPLAINT**

NBTY, INC., UNITED STATES        **JURY TRIAL DEMANDED**
NUTRITION, INC., and
HEALTHWATCHERS, INC.;

Defendants,

_____/

## CLASS ACTION COMPLAINT

Plaintiffs Jason Mencer, Vincent Dougherty, Tim Harrold, Ross Hepburn, Josh Frasier, and Cody Walden ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, by his undersigned attorneys, upon personal knowledge as to themselves, upon information and belief, and based upon the investigation of their Counsel as to the remaining allegations, allege as follows:

# I.    INTRODUCTION

1.      This is a civil class action brought individually by Plaintiffs and on behalf of all persons and entities in the United States and the states of Colorado, Florida, Kentucky, Oregon, Pennsylvania, and South Carolina ("Class Members"), who purchased the dietary supplement Body Fortress Super Advanced Whey Protein[1] (the "Product") from Defendants.

2.      The whey protein industry is a growing and extremely competitive business environment: "during the forecast period, [the market for] protein products is expected to grow by 62% to reach US$7.8 billion in 2018." http://www.euromonitor.com/sports-nutrition-in-the-us/report

3.      However, the price of wholesale whey protein keeps increasing and is usually purchased for roughly $15-$18/kilo, making the profit margins on whey protein powder products very low.

4.      Defendants designed, manufactured, warranted, advertised and sold the Product throughout the United States, including in the states of Colorado, Kentucky, Florida, Oregon, Pennsylvania and South Carolina.

5.      In an effort to reduce protein manufacturing costs, Defendants add cheaper free form amino acids and non-protein ingredients to increase the nitrogen content of the Product's protein powder.  Nitrogen is the "tag" used by a common

---

[1] Super Advanced Whey Protein contains two types of whey protein; whey protein concentrate and whey protein isolate.

protein content test to determine the amount of protein in a product; but this is neither a direct measure of the actual protein content in a product nor a measure of the type of nitrogen containing compounds in a product.

6.     This act is commonly referred to as "protein-spiking", "nitrogen-spiking" or "amino-spiking", and was evidenced recently in the 2007 pet food incident, which lead to domestic recalls of these products, and the 2008 Chinese milk powder scandal, when melamine, a nitrogen-rich chemical, was added to raw materials to fake high protein contents.

7.     As a result of Defendants' practices, the consumer is left with a product that contains approximately 30% less whey protein than Defendants represented.

8.     This practice has been condemned by the American Herbal Products Association (AHPA), an organization of dietary supplement manufacturers, which has issued a standard for manufacturers for measuring the True Protein content of their products which:

a) Defines protein as "a chain of amino acids connected by peptide bonds" for labeling purposes;

b) The use of calculations to include only proteins that are "chains of amino acids connected by peptide bonds; and

c) To exclude any "non-protein nitrogen-containing substances" when counting total protein content.

www.ahpa.org/Default.aspx?tabid=441, April 1, 2014

9. Defendant NBTY, Inc. has been a member of AHPA since 1993.

10. Even one of the largest distributors in the United States of whey protein products, General Nutrition Centers, Inc. ("GNC") has publicly criticized the kind of conduct engaged in by Defendants, essentially claiming it to be misleading to consumers. According to GNC, consumers cannot be sure that they are getting 100 percent protein in their products since companies don't always show how they figure total grams of protein per serving. www.gnclivewell.com/realprotein.

11. Despite the knowledge that "protein-spiking" is misleading to consumers, Defendants continue to advertise, distribute, label, manufacture and market the Product in a misleading and deceptive manner.

## II.   Parties

### Named Plaintiffs

12. During the Class period, Jason Mencer and Florida Class Members purchased the Product Body Fortress Super Advanced Whey Protein through Walmart and various other retailers such as CVS, Walgreens, and numerous others. Plaintiff Mencer and Class Members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices set forth in this Complaint. Jason Mencer is a resident of the County of Polk, State of Florida, and the events set forth in the Complaint took place therein, who, on or about June 21, 2014,

purchased the Product Body Fortress Super Advanced Whey Protein for approximately $16.98, with the UPC Code 074312443152, for his own use and not for resale.  Plaintiff Mencer made regular purchases of Defendants' product, approximately one container every two to three weeks for the past several years, from two Walmart locations in Polk County, FL.  These two Walmart's are located at 355 Cypress Gardens Blvd, Winter Haven, FL 33880 and 5600 State Road 544, Winter Haven, FL 33880.

13.     During the Class Period, Vincent Dougherty and Pennsylvania Class Members purchased the Product Body Fortress Super Advanced Whey Protein through Walmart and various other retailers such as CVS, Walgreens, and numerous others. Plaintiff Dougherty and Class Members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices set forth in this Complaint.  Vincent Dougherty is a resident of the County of Clearfield, State of Pennsylvania, and the events set forth in the Complaint took place therein, who, on or about May 27, 2014, purchased the Product Body Fortress Super Advanced Whey Protein, with the UPC Code 074312443152, for his own use and not for resale from Walmart located at 20 Industrial Dr., Dubois, PA 15801, for approximately $15.98.

14.     During the Class Period, Tim Harrold and Oregon Class  Members purchased the Product Body Fortress Super Advanced Whey Protein  through Walmart and various other retailers such as CVS, Walgreens, and  numerous others.

Plaintiff Harrold and Class Members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices set forth in this Complaint.

15.     During the Class Period, Ross Hepburn and Kentucky Class Members purchased the Product Body Fortress Super Advanced Whey Protein through Walmart and various other retailers such as CVS, Walgreens, and numerous others. Plaintiff Hepburn and Class Members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices set forth in this Complaint. Ross Hepburn, who, on or about March 31, 2011, purchased the Product Body Fortress Super Advanced Whey Protein, for his own use and not for resale from Walmart.com, for approximately $13.00. Mr. Hepburn also purchase the "Body Fortress 5pk Bundle" which contained five containers of the Product on November 15, 2011 for $60.72.

16.     During the Class Period, Josh Frasier and South Carolina Class Members purchased the Product Body Fortress Super Advanced Whey Protein through Walmart and various other retailers such as CVS, Walgreens, and numerous others. Plaintiff Frasier and Class Members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices set forth in this Complaint. Josh Frasier purchased the Product Body Fortress Super Advanced Whey Protein, with the UPC Code 07431229655, for his own use and not for resale from Walmart located at 1283 Broad St., Sumpter, SC 29150, for approximately $15.98.

17.    During the Class Period, Cody Walden and Colorado Class Members purchased the Product Body Fortress Super Advanced Whey Protein through Walmart and various other retailers such as CVS, Walgreens, and numerous others. Plaintiff Walden and Class Members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive and misleading practices set forth in this Complaint. Cody Walden purchased the Product Body Fortress Super Advanced Whey Protein, with, for his own use and not for resale from Walmart located in Stapleton, Colorado, for approximately $15.00.

## Defendants

18.    NBTY, Inc. is licensed in the State of Delaware, with a principal place of business address at 2100 Smithtown Avenue, Ronkonkoma, NY 11779. Under information and belief NBTY, Inc. has controlling interest in United States Nutrition, Inc. and Healthwatchers, Inc.

19.    Defendant NBTY ("NBTY") is the parent company of Defendants, United States Nutrition, Inc. and Healthwatchers, Inc.

20.    United States Nutrition, Inc. is licensed in the State of Delaware, with a principal place of business address at 90 Orville Drive, Bohemia, NY 11716, and upon information and belief is a subsidiary of Defendant NBTY, Inc.

21.    Healthwatchers, Inc. is licensed in the State of Delaware, with a principal place of business address at 90 Orville Drive, Bohemia, NY 11716, and upon information and belief is a subsidiary of Defendant NBTY, Inc.

## III.   JURISDICTION AND VENUE

22.     Subject Matter Jurisdiction.     This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d) because the combined claims of the proposed class members exceed $5,000,000[2] and because Defendants are a citizen of a different state from the members of the Class.

23.     Personal Jurisdiction.     This Court has personal jurisdiction over Defendants because they are headquartered in this District.

24.     Venue.     Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District; and (2) 28 U.S.C. § 1391(b)(3) in that Defendant is subject to personal jurisdiction in this District.

## IV.   STATEMENT OF FACTS

### The Differences Between Whey Protein & Free Form Amino Acids

25.     Whey is a complete protein source, which means it contains all the essential amino acids your body needs to build protein-based compounds such as muscle tissue, skin, fingernails, hair and enzymes. Daily protein need depends on your size, gender and activity levels, although it likely amounts to somewhere

---

[2] Defendant's Product is sold through numerous different online and brick/mortar retailers, including but not limited to; Walgreens, Vitamin World, Wal-Mart, and Bodybuilding.com.  There are likely hundreds of thousands of class members composing the proposed classes with tens of millions of dollars spent on the Product due to the far reaching distribution channels and high consumer demand for whey protein products.

between 46 grams and 56 grams. For elite athletes, daily protein requirements are well over 100 grams, which is often difficult to get just from eating food.  Of course, persons may need to supplement their protein intake for reasons of ill-health as well.

26.     Whey protein powder is especially rich in branched-chain amino acids -- leucine, isoleucine and valine -- which are metabolized directly within your muscles as opposed to being processed in your liver first.

27.     The 2005 dietary reference intake (DRI) guidance from the National Academy of Sciences clearly defines protein as macromolecules with links of amino acids, and does not mention free-form amino acids or creatine.  Although amino acids are the building blocks of protein, they do not have the same beneficial effects of whole protein when they are free-form, and not part of an actual protein.  Part of the reason for this has to do with protein digestion and absorption.

28.     There have been several studies that have shown that protein is absorbed more effectively than amino acids.[3]

29.     Accordingly, at least one study was conducted to determine whether the effects of whey protein ingestion on muscle protein accrual are due solely to its constituent essential amino acid content. The study was a comparison of three trial

---

[3] Di Pasquale MG. Amino Acids and Proteins for the Athlete: The Anabolic Edge, Second Edition.  Boca Raton, FL: CRC Press; 2008:190.

groups. The first provided intact whey protein (whey protein powder). The other two trials provided either the individual essential amino acids (i.e. free-form) or the individual non-essential amino acids found in whey. The researchers determined that whey protein ingestion improves skeletal muscle protein accrual through mechanisms that are beyond those attributed to its essential amino acid content.[4]

30.    Yet another study found that "the lack of recovery after immobilization-induced atrophy during ageing is due to an 'anabolic resistance' of protein synthesis to amino acids during rehabilitation." The study's results "highlight a novel approach to induce muscle mass recovery following atrophy in the elderly by giving soluble milk protein or high protein diets."[5]

31.    Thus, one review study the authors concluded that, "the bound form of an EAA [essential amino acid] may be more efficiently utilized than when delivered in its free-form."[6]

**Body Fortress' Misleading Labeling of Super Advanced Whey Protein**

32.    Defendants feature the name of the ingredient sought by millions of American consumers, "whey protein", by predominantly featuring it in the

---

[4] Katsanos C, *et al*. Whey protein ingestion in elderly results in greater muscle protein accrual than ingestion of its constituent essential amino acid content. Nutr. Res. Oct. 2008; 28(10):651-658.

[5] Magne H, *et al*. Contrarily to whey and high protein diets, dietary free leucine supplementation cannot reverse the lack of recovery of muscle mass after prolonged immobilization during ageing. J. Physiol. Apr 15, 2012; 590(Pt 8): 2035-2049.

[6] Terada T, Inui K. Peptide transporters: structure, function, regulation and application for drug delivery. Curr Drug Metab. 2004;5:85-94.

name of the Product, "Body Fortress Super Advanced Whey Protein" on the containers.  *See* Exhibit A.

33.    Defendants' product, "Body Fortress Super Advanced Whey Protein" is labeled as providing 30 grams of protein per serving:



34.    However, Defendants' claimed total protein count of 30 grams of protein per serving, in Super Advanced Whey Protein, is not just whey protein but also includes, for the purposes of "protein-spiking": several free form amino acids,

including Glycine, Threonline, L-Glutamine, Leucine, Valine, and Isoleucine; the non-protein amino acid Taurine; and the non-amino acid compound Creatine Monohydrate.

35.    Once these "protein spiking" agents are removed from the formula of analysis, and the "bound" amino acid count is determined, the true content of whey protein in the Product can be determined.

36.    After scientific testing of the product Super Advanced Whey Protein, the actual total content per serving of whey protein is actually around 21.5 grams (as calculated from the total bonded amino acids) as opposed to 30 grams of protein claims by Defendants for their "Whey Protein" products.  *See* Exhibit C.

37.    The FDCA actually speaks to the misleading nature of this sort of labeling of a product under 21 C.F.R. § 101.18(b), which states:

> The labeling of a food which contains two or more ingredients may be misleading by reason (among other reasons) of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling.

38.    In violation of 21 C.F.R. § 101.18(b), Defendants mislead consumers by repeatedly referencing whey protein, including in the name of the Product, but never disclaiming the limited amount of whey protein that the Product actually delivers or making clear that the Product's protein content is only fractionally whey protein.

39.     Defendants use the term "whey protein" in a way that is interchangeable with the term "protein", so the consumer is misled to believe that every gram of protein in the product is comprised solely of whey protein.

40.     For the Product Super Advanced Whey Protein, under the "Supplement Facts" section of the label, referenced above, under "Other Ingredients", the Defendants list Whey Protein Concentrate and Whey Protein Isolate in their "Super Whey Protein Blend".

41.     In contrast, Defendants disclose the "protein-spiking" agents in a separate category they call the "Super Recovery Blend" which makes no reference to the word "protein".

42.     A reasonable consumer, looking at the name of the Product, and reading the "Supplement Facts", is misled into thinking that the 30 grams of protein per serving claimed by Defendants for the Whey Protein Product are derived exclusively from the "Super Whey Protein Blend".

43.     Moreover, Defendants make further deceptive references to whey protein on the actual label of the product Super Advanced Whey Protein:

a)  "60g PREMIUM PROTEIN";

b)  "**PREMIUM WHEY PROTEIN**";

c)  "Body Fortress Super Advanced **Whey Protein** delivers a **powerful blend of premium proteins** athletes need to support lean muscle mass and maximize their training.";

d) "Body Fortress Super Advanced **Whey Protein features a Super Recovery Blend to further enhance the benefits of our premium Whey Protein Blend**.";

e) "Whey is the preferred **protein source** in sports and bodybuilding nutrition because it contains superior quality **Branched Chain Amino Acids — made up of Leucine, Isoleucine and Valine —** which are important for the maintenance of muscle tissue."; and

f) "Contains naturally occurring **Branched Chain Amino Acids** from **protein**."[7]

*See* Exhibits A-B.

44.    Defendants also include a graph on the labels of the Products that explain the benefits of whey protein, exclusively, furthering the false impression that whey protein is the sole source of protein within the Products. *See* Exhibit B.

45.    All of these misleading label claims, along with the Products' names, "Super Whey Protein Blend" and "Whey Protein Isolate", taken together, mislead reasonable consumers that the protein content of the Products were derived solely from whey protein.

---

[7] Defendants say "protein" in this statement to mean complete protein which contains Branched Chain Amino Acids ("BCAAs"). Defendants do not differentiate between Whey Protein and the other non-protein sources they use towards their protein count. Creatine Monohydrate, Glycine and Taurine do not contain BCAAs.

46.     Nowhere on the label does it state, or even imply, that the protein content contains any, let alone substantial amounts of free form and non-protein amino acids.

47.     Plaintiffs and Class Members were in fact misled by Defendant's representations regarding the true nature of the protein content and value.

48.     The difference between the Product promised and the Product sold is significant.  The amount of actual protein provided, and the measure of protein per serving, has real impacts on the benefits provided to consumers by the Product, and the actual value of the Product itself.

49.     Persons requiring a certain amount of protein supplementation, whether as part of a fitness regimen or for real health needs, are left to ingest less protein than Defendants state will be provided.

50.     Defendants' false and misleading claims contained herein are in violation of  21 C.F.R. § 101.18(b), making the Product misbranded.

51.     Defendants' deceptive statements violate 21 U.S.C. § 343(a)(1), which deems food (including nutritional supplements) misbranded when the label contains a statement that is "false or misleading in any particular".

52.     Defendants' deceptive statements also violate the Colorado Pure Food & Drug Law 25-5-411, KRS 217.035, Florida Statute § 500.11(1)(a) and Oregon Statute § 616.250(1) which also deem food (including nutritional supplements)

misbranded when the labels contains a statement that is "false or misleading in any particular".

53.     The introduction of misbranded food into interstate commerce is prohibited under the FDCA and all state parallel statutes cited in this Class Action Complaint.

54.     Plaintiffs and Class Members would have purchased another whey protein product, if any at all, or would have only paid for the whey protein actually delivered with the Product, if they would have not been deceived by the misleading labeling of the Product by Defendants.

## V.     CLASS ACTION ALLEGATIONS

55.     Plaintiffs bring this action individually and as representatives of all those similarly situated pursuant to Rule 23 F.R.C.P. on behalf of the class and subclass ("the Classes"). The Classes are defined as follows:

> **National Class:**     All persons in the United States that purchased the Product at any time during the four years before the date of filing of this Complaint to the present.

> **Colorado Subclass:**  All persons in the State of Colorado that purchased the Product at any time during the four years before the date of filing of this Complaint to the present.

> **Florida Subclass:**   All persons in the State of Florida that purchased the Product at any time during the four years before the date of filing of this Complaint to the present.

> **Kentucky Subclass:**  All persons in the State of Kentucky that purchased the Product at any time during the four years before the date of filing of this Complaint to the present.

**Oregon Subclass:**  All persons in the State of Oregon that purchased the Product at any time during the four years before the date of filing of this Complaint to the present.

**Pennsylvania Subclass:**  All persons in the State of Pennsylvania that purchased the Product at any time during the four years before the date of filing of this Complaint to the present.

**South Carolina Subclass:**  All persons in the State of South Carolina that purchased the Product at any time during the four years before the date of filing of this Complaint to the present.

56.    Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest or that have a controlling interest in Defendants, and Defendants' legal representatives, assignees, and successors. Also excluded are the judge to who this case is assigned and any member of the judge's immediate family.

57.    Numerosity. The Classes are so numerous that joinder of all members is impracticable. On information and belief, the Classes have more than 10,000 members. Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

58.    Commonality. There are numerous questions of law and fact common to Plaintiff and members of the Classes. These common questions of law and fact include, but are not limited to, the following:

a.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product are deceptive;

17

b. Whether Defendants violated Florida and Oregon consumer protection statutes; and

c. Whether Defendants were Unjustly Enriched at the expense of the Plaintiffs and Class Members.

59. Typicality.   Plaintiffs' claims are typical of the claims of the Classes. Plaintiffs' claims, like the claims of the Classes, arise out of the same common course of conduct by Defendants and are based on the same legal and remedial theories.

60. Adequacy.   Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have retained competent and capable attorneys with significant experience and complex and class action litigation, including consumer class actions. Plaintiffs and his counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel has interests that are contrary to or that conflict with those of the proposed Classes.

61. Predominance. Defendants have engaged in a common course of conduct toward Plaintiffs and members of the Classes. The common issues arising from this conduct that affect Plaintiffs and members of the Classes predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

62.     Superiority. A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendants to keep such adulterated and misbranded products out of the market and to compensate those who have mislead into purchase of the Product. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendants are small because the damages in an individual action are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because Defendant acted or failed to act on grounds generally applicable to the Classes. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

63.     Injunctive and Declaratory Relief Appropriate.     Defendants have acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a class wide basis.

# VI.   CAUSES OF ACTION

## COUNT I

**Violation of the Florida Deceptive and Unfair Trade Practices Act
(Florida Statutes §§501.201 et seq.)
(On Behalf of Florida Class Members Represented by Jason Mencer)**

64.    Plaintiff incorporates each preceding paragraph as if fully set forth herein.

65.    This action is brought to secure redress for the unlawful, deceptive and unfair trade practices perpetrated by Defendants on behalf of Plaintiff and the Class members.

66.    Plaintiff and all Class Members are "consumers" and the transactions at issue in this complaint constitute "trade or commerce" as defined by Florida Statutes § 501.203 (7) and (8) respectively.

67.    Florida Statutes § 502.201, et seq. was enacted to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce.

68.    Defendants' actions, as alleged herein, constitute affirmative acts or representations including: unconscionable commercial practices; deception; fraud; false pretense; false promise; and/or misrepresentation, and therefore are unlawful under the FDUTPA.

69.     When a FDUPTA claim is based on an affirmative act or representation, neither intent to deceive by Defendants nor actual reliance by Plaintiff or the Class need be shown.

70.     Defendants' actions, as alleged herein, constitute knowing omissions and therefore are unlawful under the FDUTPA.

71.     Defendants' actions are also unlawful by the misbranding of the Product in violation of Florida Statute § 500.11(1)(a).

72.     Plaintiff and the Class reasonably and justifiably relied on Defendants' deceptive, unfair, fraudulent, misrepresentations, as alleged herein. Plaintiff and members of the proposed Class and the public were certain to be deceived because Defendants knowingly failed to disclose the source, affiliation, origin, characteristics, ingredients, standards and quality of the Products. Defendants' business practices in its advertising, marketing, packaging, labeling and sales of the Products as unique and superior products justifying substantially higher prices over alternative whey protein dietary supplements, is an unconscionable, unfair, and deceptive act or practice in violation of the FDUPTA.

73.             As  a  direct  and  proximate  cause  of  Defendants' unlawful  acts  and  omissions,  Plaintiff  and  the  Class  have  suffered  an ascertainable loss of money or  property, real or personal, in that they would not  have  purchased  the  Products  but  for  Defendants'  material  omissions  and affirmative acts or representations in  connection with the marketing, advertising,

and sale of the Product.

74.     Plaintiffs and the Class Members are entitled to compensatory

damages, equitable and declaratory relief, costs, and reasonable attorney's fees.

## COUNT II
### Violation of the Oregon Unlawful Trade Practices Act
### (ORS §§646.605 et seq.)
### (On Behalf of Oregon Class Members Represented by Tim Harrold)

75.     Plaintiff incorporates each preceding paragraph as if fully set forth

herein.

76.     This cause of action is brought pursuant to the Oregon Unlawful

Trade Practices Act, ORS §§ 646.605 *et seq*., (hereinafter referred to as "UTPA" or

the "Act") on behalf of Plaintiff and the Class Members to secure redress for the

unlawful, deceptive and unfair trade practices perpetrated by Defendants.

77.     Plaintiff and Class Members are purchasers of the Products, they are

the end users and intended beneficiaries of said product.

78.     Defendants violated the UTPA as follows:

   a.  Defendants employed an unconscionable tactic in connection with

   the sale or other disposition of the Product by inducing Plaintiff to

   purchase the Product based on the misleading labeling claims in

   violation of ORS § 646.607(1);

   b.  Defendants engaged in an unlawful practice in the course of its

   business by:

22

    i.   Representing that the Product had characteristics, benefits, or qualities that they do not have, in violation of § 646.608(1)(e);

    ii.   Representing that the Product are of a particular standard, quality or grade when they are of another, in violation of § 646.608(1)(g); and

    iii.   Violation of Oregon Statute § 616.250(1).

79.    As a result of Defendants' wilful unlawful trade practices, Plaintiff and Class Members have suffered an ascertainable loss of money or property.

80.    Plaintiff and Class Members are entitled to actual and punitive damages in an amount to be determined at trial.

81.    Pursuant to ORS § 646.638(3), Plaintiff and Class Members are entitled to reasonable attorneys' fees and costs.

## **COUNT III**

**Violation of the Kentucky Consumer Protection Act**
**(Ky. St. § 367.110, *et seq.*)**
**(On Behalf of Kentucky Class Members Represented by Ross Hepburn)**

82.    Plaintiff incorporates each preceding paragraph as if fully set forth herein.

83.    Plaintiff and Class Members purchased the Products for personal, family or household purposes.

84.   The purchases happened as a result of the unfair, false, misleading and deceptive acts or practices of Defendants and in the conduct of trade or commerce.

85.   As a result of the unfair, false, misleading and deceptive acts or practices of Defendants, Plaintiff and Class Members suffered an ascertainable loss of money.

86.   Plaintiff and Class Members are entitled to actual and punitive damages.

87.   Plaintiff and Class Members are entitled to attorneys' fees and costs.


## COUNT IV

**Violation of the Colorado Consumer Protection Act
(Co. St. § 6-1-101, *et seq.*)
(On Behalf of Colorado Class Members Represented by Cody Walden)**

88.   Plaintiff incorporates each preceding paragraph as if fully set forth herein.

89.   Plaintiff and Class Members were actual consumers of the Products.

90.   Defendants engaged in unlawful deceptive trade practices in the course of their business by:

> i.   Representing that the Product had characteristics, benefits, or qualities that they do not have, in violation of § 6-1-105(1)(e);

    ii. Representing that the Product are of a particular standard, quality or grade when they are of another, in violation of § 6-1-105(1)(g); and

    iii. Violation of Colorado Pure Food & Drug Law 25-5-411.

91. Defendants unlawful practices caused Plaintiff and the Class Members to purchase the Products.

92. Plaintiff and the Class Members suffered an injury in fact as a result.

93. The public has been significantly impacted by Defendants' course of conduct

94. Plaintiff and Class Members are entitled to actual and punitive damages.

95. Plaintiff and Class Members are entitled to attorneys' fees and costs.

**<u>COUNT V</u>**
**Unjust Enrichment**
**(On Behalf of the National Class and All Subclasses)**

96. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

94. Plaintiffs and Class Members conferred benefits on Defendants by purchasing the Product.

25

95.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchase of the Product.  Retention of those monies under these circumstances is unjust and inequitable because Defendants' labeling of the Product was misleading to consumers, which caused injuries to Plaintiffs and Class Members because they would have not purchased the Product if the true facts would have been known.

96.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class Members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class Members for their unjust enrichment, as ordered by the Court.

## VII. RELIEF REQUESTED

Plaintiff requests for the following relief:

A.     Certification of the proposed National Class;

B.     Certification of the proposed Colorado Subclass;

C.     Certification of the proposed Florida Subclass;

D.     Certification of the proposed Kentucky Subclass;

E.     Certification of the proposed Oregon Subclass;

F.     Certification of the proposed Pennsylvania Subclass;

G.     Certification of the proposed South Carolina Subclass;

H.     Appointment of Plaintiffs as class representatives;

I.     Appointment of the undersigned counsel as counsel for the Class;

J.    A declaration that Defendants' actions complained of herein violate the states of Florida and Oregon consumer protection statutes.

K.    A declaration that Defendants were Unjustly Enriched.

L.    An order enjoining Defendants from engaging in the unlawful conduct set forth herein;

M.    An award to Plaintiffs and the Class of attorneys' fees and costs, as allowed by law and/or equity;

N.    Leave to amend this Complaint to conform to the evidence presented at trial; and

O.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

## VIII.  DEMAND FOR JURY

Plaintiffs demand a trial by jury for all issues so triable.

DATED: August 25, 2014                    **SEEGER WEISS LLP**


By:   s/ Jonathan Shub
      Jonathan Shub
      Scott Alan George
      SEEGER WEISS LLP
      77 Water Street
      New York, NY 10005
      jshub@seegerweiss.com
      sgeorge@seegerweiss.com
      Ph: 215-564-2300
      Fax: 215-851-8029

Nick Suciu III (*Pro Hac Vice Forthcoming*)
BARBAT, MANSOUR & SUCIU PLLC
434 West Alexandrine #101
Detroit, MI 48201
P: (313) 303-3472
F: (248) 698-8634
Nicksuciu@bmslawyers.com

Jordan L. Chaikin (*Pro Hac Vice Forthcoming*)
PARKER WAICHMAN LLP
27300 Riverview Center Blvd., Suite 103
Bonita Springs, Florida 34134
Telephone: (239) 390-1000
Facsimile: (239) 390-0055
Email: jchaikin@yourlawyer.com

*Attorneys for Plaintiffs and the Putative Classes*